**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **DURR SYSTEMS, INC.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: GJH-18-2597** |
| **EFC SYSTEMS INC.,** | * | |
| **Defendant.** | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

This patent infringement litigation arises from a dispute between Plaintiff Durr Systems, Inc. and Defendant EFC Systems, Inc. related to the patents for bell cups manufactured by Durr for use in spray painting systems. ECF No. 60. Pending before the Court is Plaintiff's Motion to Strike Defendant's Affirmative Defenses ("Motion to Strike Affirmative Defenses"), ECF No. 71, and three motions related to the Claim Construction Process under Loc. R. 805.1 (D. Md. 2018) ("Claim Construction Motions"): (1) Plaintiff's Motion to Strike the Expert Report of Dr. Werner Dahm and to Exclude Testimony ("Motion to Strike Dr. Dahm's Expert Testimony"), ECF No. 70; (2) Defendant's Motion to Strike the Declaration and Testimony of Vince Dattilo ("Motion to Strike Mr. Dattilo's Expert Testimony'), ECF No. 92; and (3) Plaintiff's Motion to Compel Deposition of Dr. Werner Dahm or in Alternative its Supplement to Strike Dr. Dahm and Prohibit Him from Testifying at the Markman Hearing ("Motion to Compel"), ECF No. 98-1.[1] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Durr's

---

[1] Also pending is Defendant's Motion for Leave to File a Sur-Reply to Plaintiff's Reply Memorandum in Support of its Motion to Strike Defendant's Affirmative Defenses, ECF No. 84, and Plaintiff's Motion to Seal Exhibits 1 & 3 to its L.R. 104.8.c Certificate of Conference Regarding its Motion to Compel Defendant's Responses to Requests for Production, ECF No. 89. Theses Motions are granted.

Motion to Strike Affirmative Defenses and Motion to Compel are granted; and Durr's Motion to Strike Dr. Dahm's Expert Testimony and EFC's Motion to Strike Mr. Dattilo's Expert Testimony are denied.

## I.   BACKGROUND[2]

### A.   The Product and the Parties

Automotive and industrial paint application is accomplished by using rotary atomization paint systems. ECF No. 66 at 28.[3] These systems use a "bell cup" that attaches to the end of a turbine and rotates at high speeds. *Id.* at 28–29. Paint is injected into the center of the bell cup from the rear, and the bell cup's rotation results in atomization of the paint into small droplets. *Id.* Many modern automobile and industrial equipment manufacturing facilities automate the paint application process by attaching turbines and bell cups to robotic paint equipment, such as robotic paint arms. *Id.* at 29. There are several manufacturers of these robotic arms and these manufacturers generally sell turbines and bell cups as well. *Id.*

Plaintiff Durr Systems ("Durr") is a U.S. subsidiary of Dürr AG, a German company that has been manufacturing robotic paint systems and bell cups for automotive and industrial paint facilities for decades. ECF No. 67 ¶ 10. Durr sells, supplies, and services automated spray painting systems within the United States for original and retro-fit installation in painting facilities. ECF No. 60 ¶ 9; ECF No. 67 ¶ 10.  In connection with this business, Durr also sells and supplies replacement bell cups. ECF No. 60 ¶¶ 11, 13; ECF No. 67 ¶ 10.

---

[2] These facts are taken from Plaintiff's Amended Complaint, ECF No. 60, Defendant's Answer, Affirmative Defenses, and Counterclaims, ECF No. 66, and Plaintiff's Answer to Defendant's Counterclaims, ECF No. 67, and, unless otherwise indicated, are undisputed.
[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

Defendant EFC Systems, Inc. ("EFC") was established in 1993 as an alternative source for industrial paint equipment. ECF No. 66 at 30. According to EFC, its founder had determined that the manufacturers of robotic paint systems and their components were producing components—such as bell cups and turbines—that failed to meet the requirements of customers. *Id.* This failure resulted in problems on the manufacturing lines and lost revenue for U.S. automakers. *Id*. EFC does not manufacture or sell robotic arms, robotic control systems, or similar equipment. *Id.*; *see* ECF No. 67 ¶ 12. Instead, EFC claims to specialize in the design, construction, and manufacture of turbines, bell cups, and other critical parts for industrial paint equipment. ECF No. 66 at 30.

B.     **The Infringement**

Durr is the alleged assignee of five different patents for rotary atomizers—*i.e.* bell cups—for use with particulate paints ("the Asserted Patents"): U.S. Patent No. 6,189,804 ("the '804 Patent"), U.S. Patent No. 6,360,962 ("the '962 Patent"), U.S. Patent No. 7,017,835 ("the '835 Patent"), U.S. Patent No. 8,141,797 ("the '797 Patent"), and U.S. Patent No. 8,590,813 ("the '813 Patent"). ECF No. 60 ¶ 35. As the assignee, Durr purports to be the owner of all rights, title, and interest in and to the Asserted Patents and to have the right to sue and recover for infringement thereof. ECF No. 66 at 30–31; ECF No. 67 ¶¶ 14–19. The Asserted Patents are all in the same patent family and share a common specification. ECF No. 60 ¶¶ 36–37.

Durr has asserted that EFC's manufacture and sale of certain bell cups has infringed Claim 1 of the '804 Patent, Claim 1 of the '962 Patent, Claim 6 of the '835 Patent, Claim 8 of the '797 Patent, and Claim 1 of the '813 Patent. ECF No. 66 at 32. Durr has also asserted that EFC has induced infringement of Claim 1 of the '797 Patent. *Id.* These claims all recite and require a

bell cup that possesses specific features regarding the "overflow surface," the "deflector," and/or the "rear cover." ECF No. 66 at 32; *see* ECF No. 60 ¶¶ 155, 165, 179, 191, 203, 227.

EFC has responded to Durr's allegations by arguing (1) that EFC's products do not infringe the Asserted Patents, and (2) that the Asserted Patents are invalid. ECF No. 66 at 32–37, 39–41.

## II.    MOTION TO STRIKE AFFIRMATIVE DEFENSES

### A.    Relevant Procedural Background

Durr initially filed this patent infringement action on August 22, 2018, alleging infringement of the Asserted Patents. ECF No. 1. On January 6, 2020, Plaintiff filed an Amended Complaint, adding claims for inducement of infringement and unfair competition under the Lanham Act. ECF No. 60. EFC filed an Answer on January 30, 2020, which included eight affirmative defenses and two counterclaims. ECF No. 66. Relevant to the pending Motion to Strike Affirmative Defenses, Defendant's First Affirmative Defense states that "Defendant does not infringe a valid and enforceable claim of [the Asserted Patents,]" the Second Affirmative Defense states "[o]ne or more of each of the Asserted Patents are invalid for failure to comply with one or more of the requirements for patentability set forth in Title 35 of the U.S. Code, including §§ 102, 103, and 112, and/or are invalid under any other grounds provided by 35 U.S.C. § 282, and/or based on other judicially-created bases for invalidity," the Third Affirmative Defense states that "Defendant has not induced any other party to infringe a valid and enforceable claim of any of the Asserted Patents," and the Fourth Affirmative Defense states that "Plaintiff is estopped from enforcing each and every of the Asserted Patents for reason of inequitable conduct during prosecution of the Asserted Patents." ECF No. 66 at 26. Durr filed an Answer to Defendant's Counterclaims on February 21, 2020, ECF No. 67.

On March 13, 2020, Durr filed a Motion to Strike Defendant's Affirmative Defenses. ECF No. 71. Durr asserted that the Court, pursuant to Fed. R. Civ. P. 12(f)(2), should strike EFC's entire Fourth Affirmative Defense, the reference to "any other ground" in EFC's Second Affirmative Defense, and the references to enforceable claims in EFC's First and Third Affirmative Defenses because the defenses are unsupported by sufficient factual allegations. ECF No. 71-1 at 1. EFC filed its Opposition to Durr's Motion on June 19, 2020, arguing that Durr's motion was untimely. ECF No. 77. On July 7, 2020, Durr filed a Reply[4] that acknowledged the untimeliness of its original motion and requested the Court to "consider its motion as a motion for judgment on the pleadings under Rule 12(c), or, alternatively, under its inherent authority, exemplified by Rule 12(f)(1)." ECF No. 83 at 1. As a consequence of Durr's change of legal basis, EFC requested leave to file a sur-reply on July 15, 2020, ECF No. 84, which the Court now grants.[5] In its sur-reply, EFC did not object "to the striking of[] defenses related to (1) inequitable conduct or (2) 'any other ground' of 35 U.S.C. other than §§ 102, 103, and 112[,]" but requested that the Court strike such defenses pursuant to Fed. R. Civ. P. 12(f)(1) rather than under the "dispositive mechanism of Rule 12(c)[.]" ECF No. 84-1 at 3.

### B.    Discussion

Although Durr has now moved under both Rules 12(c) and 12(f) of the Federal Rules of Civil Procedure, this Court will consider Durr's Motion to Strike Affirmative Defenses under Rule 12(f). "A Rule 12(c) motion for judgment on the pleadings is more appropriately resolved where 'all material allegations of fact are admitted or not controverted in the pleadings and only

---

[4] Durr's Reply was late. Durr filed its Motion Strike Affirmative Defendants on March 13, 2020. ECF No. 71. Due to COVID-19, EFC's deadline to respond in opposition was extended by 84 days. D. Md. Standing Order 2020-07 ("all filing deadlines . . . originally set to fall between March 16, 2020, and June 5, 2020, are EXTENDED by eighty-four (84) days"). EFC timely filed its Opposition on June 19, 2020. ECF No. 77. Durr had fourteen days to reply under Loc. R. 105.2(a) (D. Md. 2018), but missed this deadline and instead filed late on July 7, 2020.
[5] Durr did not oppose EFC's request to file a sur-reply. ECF No. 83 at 2.

questions of law remain to be decided by the district court.'" *Haley Paint Co. v. E.I. Du Pont Nemours & Co.*, 279 F.R.D. 331, 335 (D. Md. 2012) (citing 5C Wright & Miller, *Federal Practice and Procedure* § 1367, at 208 (3d ed. 2004)). By contrast, "a Rule 12(f) motion to strike is more fitting for situations, such as the one at bar, where a plaintiff challenges only some of the defenses raised in a defendant's pleading." *Id.* (stating Rule 12(f) "serves as a pruning device to eliminate objectionable matter from an opponent's pleadings and, unlike the Rule 12(c) procedure, it is not directed at gaining a final judgment on the merits." (quoting 5C Wright & Miller, *Federal Practice and Procedure* § 1369, at 260).

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A court 'may strike a defense that is clearly insufficient as a matter of law[,]'" *Haley Paint Co.*, 279 F.R.D. at 335 (quoting *Hanzlik v. Birach*, No. 09-cv-221 (JJC), 2009 WL 2147845, at *3 (E.D. Va. July 14, 2009))—*i.e.*, when the affirmative defense does not meet the pleading requirements of Rules 8 and 9 and as articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Id.* at 336. When striking an affirmative defense under Rule 12(f), "[t]he Court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f). The "Court enjoys wide discretion in determining whether to strike an affirmative defense under Rule 12(f) in order 'to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial.'" *Haley Paint Co.*, 279 F.R.D. at 336 (quoting *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 649 (D. Kan. 2009)).

In the instant case, EFC filed its Answer on January 30, 2020. ECF No. 66. Because the Answer included counterclaims, and therefore permitted a response, by rule, Durr needed to file a Motion to Strike prior to filing its response. *See* Fed. R. Civ. P. 12(f)(2). Durr, however, responded to the Answer on February 21, 2020, ECF No. 67, and did not file the pending Motion to Strike Affirmative Defenses until March 13, 2020, ECF No. 71. The Motion is therefore untimely. *See* Fed. R. Civ. P. 12(f)(2); *see also Uche v. Montgomery Hospice, Inc.*, No. ELH-13-878, 2014 WL 11462826, at *1 (D. Md. June 3, 2014) (denying motion to strike that was filed more than four months after both defendants had answered the amended complaint). Nevertheless, because EFC does not intend to rely on and thus does not object to the Court striking—pursuant to Fed. R. Civ. P. 12(f)(1)—the affirmative defenses to which Durr objects, the Court will exercise its discretion and "act[] on its own" to strike those defenses. Fed. R. Civ. P. 12(f)(1). Pursuant to Fed. R. Civ. P. 12(f)(1), the Court strikes (1) EFC's First and Third Affirmative Defenses in so far as they relate to inequitable conduct; (2) EFC's Second Affirmative Defense as it relates to "any other ground" of 35 U.S.C. other than §§ 102, 103, and 112, and (3) EFC's Fourth Affirmative Defense (estoppel as a result of inequitable conduct). ECF No. 71-1 at 1–2; ECF No. 84-1 at 3.

## III.   CLAIM CONSTRUCTION MOTIONS

### A.   Relevant Procedural Background

Between July and October of 2019, the parties and the Court exchanged a series of correspondence discussing the proper interpretation of Loc. R. 805.1(d) (D. Md. 2018). ECF Nos. 31, 32, 33, 34, 40, 41, 42, 43, 44, 45, 46. Specifically, the parties disputed the scope of "special or uncommon meanings" under the local rules and whether, in its Claim Construction Statement, a party must provide, rather than simply identify, the expert testimony that supports

its proposed constructions. *See* ECF No. 47 at 1. The Court attempted to resolve this dispute on

October 15, 2019 by issuing a letter order. ECF No. 47. The Court's Letter Order held that (1)

"special or uncommon meanings may include constructions based on lexicography or disavowal

and any terms that have a specific and special meaning or usage within a particular field that

would not be readily apparent to a layperson[,]" but EFC may not include within its Responsive

Claim Construction Statement a proposed construction for every term in the claim, *id.* at 2; and

(2) EFC need not provide the actual expert testimony supporting its constructions in its

Responsive Claim Construction Statement, "but it must identify the experts and explain the

nature of the expert testimony and what that testimony will demonstrate about the meaning of a

particular term[,]" *id.* at 3.

However, despite the Court's Letter Order, the parties continue to disagree about issues

relating to the claim construction process under Loc. R. 805.1 (D. Md. 2018). ECF No. 70, 75,

82, 92, 93, 94, 98. On March 6, 2020, Durr filed a Motion to Strike the Expert Report of Dr.

Werner Dahm and to Exclude Testimony, ECF No. 70, EFC filed its Opposition on June 12,

2020, ECF No. 75, and Durr replied on June 26, 2020, ECF No. 82. On September 10, 2020,

EFC filed a Motion to Strike the Declaration and Testimony of Vince Dattilo, ECF No. 92, 93,

Durr filed its Opposition on September 24, 2020, ECF No. 94, and EFC replied on October 8,

2020. Finally, on October 15, 2020, Durr filed a Loc. R. 104.7 (D. Md. 2018) Certificate of

Conference regarding its September 10, 2020 Motion to Compel Deposition of Dr. Werner

Dahm or in the Alternate its Supplement to Strike Dr. Dahm and Prohibit Him from Testifying at

the Markman Hearing. ECF No. 98. Pursuant to Loc R. 104.8 (D. Md. 2018), Durr appended its

Motion to Compel and the related memoranda as exhibits to its Certificate of Conference. ECF

No. 98-1; ECF No. 98-2; ECF No. 98-3.

The claim construction process has continued during these disputes. The parties' Joint Claim Construction Statement, ECF No. 62, Durr's Opening Claim Construction Brief, ECF No. 63,[6] and EFC's Opening Claim Construction Brief, ECF No. 65, were all filed on January 24, 2020. On June 25, 2020, both parties filed their respective Responsive Claim Construction Briefs, ECF Nos. 79, 80, 81.

**B.     Discussion**

Though the parties' pending Claim Construction Motions are interrelated, the Court discusses them separately and in the order they were filed for maximum clarity.

**1.     Motion to Strike Dr. Dahm's Expert Testimony**

On January 24, 2020, the parties filed their Joint Claim Construction Statement. ECF No. 62. Durr's position is that all claim terms have plain and ordinary meanings, *see id.* at 1, while EFC's position is that eight claim expressions have special or uncommon meanings, *see id.* at 2; ECF No. 62-3. These eight expressions are "paint," "particulate material" and "particulate paint," "substantially continuous [conical overflow surface]," "conical [surface or overflow surface or front surface]," "generally conical [overflow surface or surface]" and "substantially conical [overflow surface or front surface]," "generally constant [flow angle/angle]" and "substantially constant [angle]," "generally parallel" and "substantially parallel," and "rear cover attached to the bell cup" and "bell cup further having attached thereto a rear cover." *See* ECF No. 62-3.

Defendant's Responsive Claim Construction Statement provides EFC's proposed construction for each claim expression and the intrinsic and extrinsic evidence that will support EFC's proposed constructions. *See id.* EFC indicates in this statement that its extrinsic evidence

---

[6] Durr requested to file its Opening Claim Construction Brief under seal in a Motion to Seal, in Part, Plaintiff's Opening Claim Construction Brief and Exhibits Thereto, ECF No. 64. The Court granted this request on August 14, 2020.

will include testimony from Dr. Werner Dahm. *Id.* For "paint," "particulate material" and "particulate paint," "conical [surface or overflow surface or front surface]," and "rear cover attached to the bell cup" and "bell cup further having attached thereto a rear cover," Dr. Dahm will testify that EFC's proposed constructions "represent[] the meaning[s] of th[e] term[s] as would be understood by a [person of ordinary skill in the art ("POSITA")], including in view of the well understood meaning[s] in the relevant fields of art, as well as in view of the claims, specification, prosecution histories, and cited references." *Id.* For the remaining terms, Dr. Dahm will testify that the claim expressions "ha[ve] no generally understood meaning[s] to a POSITA, and that the proposed construction[s] of th[ese] expression[s] represent[] the meaning[s] of the expression[s] as would be understood by a POSITA in view of the claims, specification, and prosecution histories, and in view of the well understood meaning of related terms in the relevant fields of art and the cited references." *Id.*

In its Motion, Durr argues that the Court should strike Dr. Dahm's testimony because it violates the Letter Order. ECF No. 70-1 at 1. Specifically, Durr contends that expert testimony is only relevant to specific and special meanings or usage within a particular field ("Industry Specific Meanings"), and, because Dr. Dahm will testify that there are no Industry Specific Meanings, his testimony is irrelevant. *See* ECF No. 70-1 at 6–8. Durr argues further that EFC's Responsive Claim Construction Statement did not provide Durr with sufficient notice about the nature of Dr. Dahm's testimony. *See* ECF No. 70-1 at 8–9. The Court disagrees with both of Durr's arguments and therefore will decline to strike Dr. Dahm's testimony.

### a.   Expert Testimony Is Not Limited to Industry Specific Meanings

Contrary to Durr's contention, the Court's Letter Order did not limit expert testimony to Industry Specific Meanings. The Court issued the Letter Order in response to the parties' dispute

over the meaning of "special or uncommon meanings" under Local Rule 805, and, relying on

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), defined "special or uncommon

meanings" as "any terms that have a specific and special meaning or usage within a particular

field that would not be readily apparent to a layperson." ECF No. 47 at 2. Although this category

does include the narrow category of Industry Specific Meanings as defined by Durr, it also

includes the broader category of meanings that would not be readily apparent to a layperson, but

would be understood by "a person of ordinary skill in the art in question at the time of the

invention." *See Phillips*, 415 F.3d at 1312–13. Expert testimony is certainly relevant to

determining the meaning that a term would have to such a person. Indeed, *Phillips* states that

"extrinsic evidence in the form of expert testimony can be useful to a court for a variety of

purposes, such as to provide background on the technology at issue, to explain how an invention

works, to ensure that the court's understanding of the technical aspects of the patent is consistent

with that of a person of skill in the art, or to establish that a particular term in the patent or the

prior art has a particular meaning in the pertinent field." *Id.* at 1318.

Given this fairly broad scope of expert testimony and the meaning of "special or

uncommon meanings," Dr. Dahm's testimony is both relevant and valid under the Letter Order.

With respect to "paint," "particulate material" and "particulate paint," "conical [surface or

overflow surface or front surface]," and "rear cover attached to the bell cup" and "bell cup

further having attached thereto a rear cover," Dr. Dahm will testify about meanings that are not

readily apparent to a layperson but that a person of ordinary skill in the art would understand to

be associated with those terms. *See* ECF No. 62-3. For the remaining terms, although they may

not have a "generally understood meaning" to a person of ordinary skill in the art, Dr. Dahm will

testify that those terms do have meanings that are not readily apparent to a layperson but that

would be understood by a person of ordinary skill in the art "in view of the claims, specification, and prosecution histories, and in view of the well understood meaning of related terms in the relevant fields of art and the cited references." *See* ECF No. 62-3. The Letter Order did not prohibit this sort of evidence. *See* ECF No. 47. Moreover, based on the Court's review of the example claim construction statements provided during the disagreement resolved by the Letter Order, *see* ECF No. 46, these are exactly the types of issues upon which experts routinely opine. As the Court enters the claim construction process, it certainly appreciates as much helpful evidence as possible, and because there is no basis to strike Dr. Dahm's testimony, the Court will decline to do so.

### b.   EFC's Responsive Claim Construction Statement Provided Sufficient Notice About the Nature of Dr. Dahm's Testimony

The Court also disagrees with Durr's argument that EFC's description of Dr. Dahm's testimony in its Responsive Claim Construction Statement violates the Letter Order. The Letter Order requires that EFC, in the initial claim construction statement, "identify its experts and explain the nature of the expert testimony and what that testimony will demonstrate about the meaning of a particular term." ECF No. 47 at 3. Correspondingly, in its Responsive Claim Construction Statement, EFC identified Dr. Dahm as an expert and explained that his testimony would show that Defendant's proposed constructions "represent[] the meaning of th[e] term[s] as would be understood by a POSITA, including in view of the well understood meaning[s] in the relevant fields of art, as well as in view of the claims, specification, prosecution histories, and cited references." *See* ECF No. 62-3. This explanation is in line with similar disclosures provided in other patent infringement cases, *see* ECF No. 46, and meets the requirements of the Court's Letter Order.

To the extent that Durr is concerned that EFC's disclosure fails to disclose the meaning upon which Dr. Dahm is intended to opine, *see* ECF No. 70-1 at 8, it seems reasonably clear to the Court that Dr. Dahm would opine on the proposed constructions provided by EFC in the claim construction statement. And, in response to Durr's complaint that EFC's opaque description of Dr. Dahm's testimony forced it to broaden the scope of its opening brief because it did not know the exact nature of Dr. Dahm's testimony, *see* ECF No. 82 at 5–7, the Court will note that parties typically do not know exactly what their opponent will argue when filing motions or opening briefs. Moreover, EFC provided Dr. Dahm's declaration in support of its Opening Brief and thus Durr had the opportunity to address Dr. Dahm's exact testimony in its Responsive Brief and can also address EFC's proposed constructions at the claim construction hearing. The Court finds Durr had sufficient notice of the nature of Dr. Dahm's testimony and will decline to strike the testimony on this basis.

### 2.      Motion to Strike Mr. Dattilo's Expert Testimony

The parties filed their respective Opening Claim Construction Briefs on January 24, 2020. ECF Nos. 63, 65. The six-page Declaration of Vince Dattilo, at issue in the instant Motion, was attached to Durr's Opening Brief as Exhibit D. ECF No. 63-4. In its Motion to Strike, EFC argues that, pursuant to Fed. R. Civ. P. 37(c)(1), the Court should strike Mr. Dattilo's Declaration and testimony for failing to include the expert disclosures required by Fed. R. Civ. P. 26(a)(2)(B). ECF No. 93 at 5. Specifically, EFC alleges that Mr. Datillo's Declaration fails to include:

> (i):      confirmation that Mr. Dattilo's Declaration contains the *complete* statement of all his opinions that he will express at claim construction;
>
> (ii):      a listing [of] all documents or other facts considered by Mr. Dattilo in forming his opinions;

> (iii):    confirmation that Mr. Dattilo's Declaration contains *all* exhibits that will be used by him to summarize or support his opinions; and
>
> (iv):    a description of the compensation of Mr. Dattilo will be paid for his testimony in this case.

*Id.* at 10 (emphasis in the original). Further, EFC alleges that Durr has not subsequently cured this failure despite an extensive meet-and-confer process. *Id.* at 9–10.[7] Durr responds that: (1) the disclosures mandated by Rule 26(a)(2)(B) do not apply to claim construction experts; and (2) in the event the Rule 26(a)(2)(B) disclosures are required, Mr. Dattilo's Declaration is in substantial compliance with Rule 26. ECF No. 94 at 10–13. The Court will address each of Durr's arguments before turning to whether Mr. Dattilo's Declaration and testimony should be excluded pursuant to Fed. R. Civ. P. 37(c)(1).

### a.    The Disclosure Requirements of Fed. R. Civ. P. 26(a)(2)(B) Apply to Claim Construction Experts

Rule 26(a)(2) of the Federal Rules of Civil Procedure addresses the disclosure of expert testimony. Specifically, Rule 26(a)(2)(A) requires each party to "disclose to the other parties the identity of any [expert] witness it may use *at trial*" and Rule 26(a)(2)(B) requires that the disclosure be accompanied by a written report prepared and signed by the expert witness "if the witness is one retained or specially employed to provide expert testimony in the case[.]" Fed. R. Civ. P. 26(a)(2) (emphasis added). This written report must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

---

[7] EFC also requests fees and costs under Rule 37(c)(1)(A). ECF No. 93 at 16.

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.* The parties here dispute whether Rule 26's requirements apply to claim construction experts. The Court holds Rule 26 does apply in this context and Mr. Dattilo's Declaration must include the information Rule 26(a)(2)(B) requires.

The Local Rules for United States District Court for the District of Maryland are silent as to whether Rule 26(a)(2)(B) applies to claim construction experts and the parties have not pointed to any prior case law from this District specifically addressing the issue. Thus, the Court will adopt the persuasive reasoning of its sister court:

> In a patent infringement action, the Markman hearing [*i.e.*, claim construction hearing] is a critical part of the trial process during which experts may be called upon to give expert testimony. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005). The outcome of the Markman hearing often decides the question of infringement. *See Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1350 (Fed. Cir. 2001). Because a Markman hearing is a critical part of the trial process in a patent case, and in light of the fact that claims construction may be case-dispositive, a party who designates an expert to testify at a Markman hearing should be subject to the same expert disclosure provisions under Rule 26 as a party who designates an expert to testify at trial.

*DR Sys., Inc. v. Fujifilm Med. Sys. USA, Inc.*, No. 06-cv-417-B (NLS), 2007 WL 9776651, at *3 (S.D. Cal. Feb. 22, 2007) (determining that Fed. R. Civ. P. 26(a)(2)(B) applies to claim construction experts where the court's local rules were silent on the issue); *see also TASER Int'l, Inc. v. Stinger Sys.*, No. 09-cv-289-MMD-PAL, 2012 WL 3562371, at *1 (D. Nev. Aug. 16, 2012) (acknowledging that, at a Markman hearing, the court sustained objections based on an expert's testimony exceeding the scope of his Rule 26 disclosures); *Centillion Data Sys., Inc. v. Am. Mgmt. Sys.*, 138 F. Supp. 2d 1117, 1123 (S.D. Ind. 2001) (requiring disclosures under Fed. R. Civ. P. 26(a)(2) for Markman hearing experts). Based on the example expert declarations

cited by the parties, ECF No. 93-8; ECF No. 93-9, this approach appears to be consistent with the current practice in this District. Thus, Mr. Dattilo's Declaration in the instant case needed to comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B).

> **b.    Mr. Dattilo's Declaration Does Not Include All the Disclosures Required Under Fed. R. Civ. P. 26(a)(2)(B)**

EFC maintains that Mr. Dattilo's Declaration is insufficient in four ways. The Court will address each in turn.

> **i.    Rule 26(a)(2)(B)(i)**

EFC alleges that Mr. Dattilo's Declaration is insufficient because it does not include a "confirmation that Mr. Dattilo's Declaration contains the *complete* statement of all his opinions that he will express at claim construction[,]" as required by Fed. R. Civ. P. 26(a)(2)(B)(i). ECF No. 93 at 10 (emphasis in original). In response, Durr asserts that it "provided Mr. Dattilo's complete testimony on the Markman question" and that Mr. Dattilo's Declaration is "substantively very similar" to the two declarations EFC attached to its Motion, which EFC represents as "compliant with Rule 26 and argues are typical of what is done in this district." ECF No. 94 at 5, 13. The Court finds Mr. Dattilo's Declaration does include the information required by Fed. R. Civ. P. 26(a)(2)(B)(i).

Rule 26(a)(2)(B)(i) requires the written report of the expert to include "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" Fed. R. Civ. P. 26(a)(2)(B)(i). Rule 26, however, does not require a separate confirmation by the expert that his declaration includes a complete statement of all his opinions. *Id.* In fact, neither of the declarations EFC attached to its Motion as examples of Rule 26 compliance include such a confirmation. ECF No. 93-8 at 46 ("If called as an expert witness for the Claim Construction hearing, in this matter, I anticipate that my testimony may concern the matters addressed below.

Additionally, I anticipate that I *may* comment on materials relating to these topics that may later become available, such as expert declarations or deposition testimony. . . . I expect to respond, as appropriate, to assertions made by any party or its experts in any declarations, or during deposition, the Claim Construction hearing, or otherwise." (emphasis added)); ECF No. 93-9 at 4 ("I submit this declaration in support of Defendants Lupin Ltd. and Lupin Pharmaceuticals, Inc.'s Opening Claim Construction Brief. I have personal knowledge of the matters set forth below, and if called upon to testify I *could and would* testify competently to them." (emphasis added)).

In his Declaration, Mr. Dattilo opines on how to classify the field of art of the subject matter of the Asserted Patents, who would be a person of ordinary skill, and how a person of ordinary skill would understand the disputed terms that will be at issue at the Markman hearing—*i.e.*, that those terms have "no specific meaning[s] to a person of ordinary skill in this field different than the plain and ordinary meaning[s] that would be understood by a lay person." ECF No. 94-1 at 5. Also, similar to the second example declaration provided by EFC, ECF No. 93-9, Mr. Dattilo's Declaration states that: "If called as a witness, I can competently testify to the facts set forth therein." ECF No. 94-1 ¶ 2. The Court finds no reason to disbelieve Durr when it asserts that the six-page Declaration is "Mr Dattilo's complete testimony on the Markman question."[8] ECF No. 94 at 5; *Prusin v. Canton's Pearls, LLC*, No. JKB-16-605, 2017 WL 3492163, at *2 (D. Md. Aug. 15, 2017) (finding that a declaration does not fail to provide "sufficient information to satisfy Rule 26's completeness requirements" just because it is "is

---

[8] It appears reasonably clear that Mr. Dattilo's opinions as to how a person of ordinary skill would understand the disputed terms are based on his 37 years of experience working at PPG Automotive Coatings Inc. and the knowledge he gained therefrom. ECF No. 94-1 at 3–4. Thus, "[w]hile the Court recognizes [Mr. Dattilo's Declaration] would benefit from some additional detail, the Court is not convinced that this lack of detail prevents the disclosure from complying with Rule 26(a)(2)(B)." *Scheer v. Costco Wholesale Corp.*, No. CIV.A. WC 12-3776, 2014 WL 3778618, at *4 (D. Md. July 29, 2014).

admittedly brief"); *see* Defendant's Expert Designation at 3, *Prusin v. Canton's Pearls, LLC*, No. JKB-16-605 (D. Md. Aug. 15, 2017) (expert report that D. Md. held was in compliance with Rule 26). If later Mr. Dattilo testifies on opinions outside of those included in his Declaration, resulting in EFC being "unfairly surprised by unexpected testimony[,]" ECF No. 96 at 4–5, then at that time the Court may take remedial action and exclude such unexpected testimony.

### ii.        Rule 26(a)(2)(B)(ii)

According to EFC, Mr. Dattilo's Declaration is also out of compliance with Rule 26 because it fails to include "a listing [of] all documents or other facts considered by Mr. Dattilo in forming his opinions[.]" ECF No. 93 at 10. Durr counters that the list of materials Mr. Dattilo considered is set out in paragraph 3 of his declaration. ECF No. 94 at 13; *see* ECF No. 94-1 ¶ 3.

Pursuant to Fed. R. Civ. P. 26(a)(2)(B)(ii), an expert witness' written report or declaration should include "the facts or data considered by the witness in forming" his opinion. Fed. R. Civ. P. 26(a)(2)(B)(ii). The example declarations EFC provided satisfy this requirement by including a statement that the expert relied on the materials cited or listed in the declaration as well as the materials set forth in a separate exhibit/addendum attached to the declaration. ECF No. 93-8 at 46, 50 ("The opinions expressed in this declaration are based on my education, knowledge, experience and my review of the materials cited and/or listed in this report"; "A complete list of materials that I relied upon and/or otherwise considered in formulating my opinions as set forth in this declaration are attached hereto as Addendum B."); ECF No. 93-9 at 5 ("In forming my opinions, I have relied on my education, background, knowledge, and experience. I have also reviewed the materials cited in my declaration, as well as the materials listed in Exhibit C."). However, while it may be true that "[e]xperts typically have a dedicated section in their reports specifically listing every document reviewed and considered by them in

forming their opinion[,]" ECF No. 93 at 10 n.4, a separate section, exhibit, or addendum listing all of the materials considered is not required by the rule. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii); *Prusin*, 2017 WL 3492163, at *1; Defendant's Expert Designation, *Prusin v. Canton's Pearls, LLC*, No. JKB-16-605 (D. Md. Aug. 15, 2017) (expert report that D. Md. held was in compliance with Rule 26). The Court finds that paragraph 3 of Mr. Dattilo's Declaration, although not a model of clarity, satisfies the requirement set forth by Fed. R. Civ. P. 26(a)(2)(B)(i). *See* ECF No. 94-1 ¶ 3 ("I have reviewed U.S. Patent Nos. 6,189,804, 6,360,962, 7,017,835, 8,141,797, and 8,590,813 (the 'Patents-In-Suit'), the file histories of each of the Patents-In-Suit, the pleadings in this case, and EFC's proposed special or uncommon constructions."). Nonetheless, should Mr. Dattilo later testify that his opinions rely on other undisclosed materials or information, the Court may exclude that testimony for non-compliance with Fed. R. Civ. P. 26(a)(2)(B)(ii).

### iii.    Rule 26(a)(2)(B)(iii)

Next EFC claims that Mr. Dattilo's Declaration does not comply with Fed. R. Civ. P. 26(a)(2)(B)(iii) because it does not include a "confirmation that Mr. Dattilo's Declaration contains *all* exhibits that will be used by him to summarize or support his opinions" ECF No. 93 at 10 (emphasis in original). Durr does not specifically address this argument, but rather asserts that Mr. Dattilo's Declaration is substantively similar to the example declarations EFC provided. ECF No. 13.

Rule 26(a)(2)(B)(iii) of the Federal Rules of Civil Procedure requires an expert's written report to include "any exhibits that will be used to summarize or support" the expert's opinions. Fed. R. Civ. P. 26(a)(2)(B)(iii). Like Fed. R. Civ. P. 26(a)(2)(B)(i), however, the rule does not require a confirmation by the expert that this has been done. In fact, neither of the example

declarations include such a confirmation. ECF No. 93-8 at 46 ("I may present visual aids and

demonstrative exhibits at the Claim Construction hearing to support or explain my testimony");

ECF No. 93-9 at 2 (including Appendix of Exhibits but no confirmation that those are the only

exhibits that will be used to summarize or support the expert's opinion.). Thus, the Court agrees

with Durr that Mr. Dattilo has complied with Fed. R. Civ. P. 26(a)(2)(B)(iii) in "all relevant and

material ways." ECF No. 94 at 13. By not including nor mentioning any exhibits that Mr. Dattilo

will use to summarize or support his opinions, the Court assumes that Mr. Dattilo does not plan

to use any such exhibits. If EFC is later "unfairly surprised by unexpected testimony" based on

undisclosed exhibits, the Court may then take remedial action. *See* ECF No. 96 at 4–5.

### iv.    Rule 26(a)(2)(B)(vi)

Finally, EFC alleges that Mr. Dattilo's Declaration failed to comply with Fed. R. Civ. P.

26(a)(2)(B)(vi) because the Declaration did not include "a description of the compensation of

Mr. Dattilo will be paid for his testimony in this case." ECF No. 93 at 10. Durr responds that it

subsequently provided EFC with Mr. Dattilo's billing records.

A declaration that complies with Fed. R. Civ. P. 26(a)(2)(B)(vi) must include "a

statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P.

26(a)(2)(B)(vi). Both example declarations attached to EFC's Motion include such statements.

ECF No. 93-8 at 51 ("I am being compensated for my consulting services in this litigation at a

rate of $800 per hour for all non-testifying services rendered and $1200 per hour for all testifying

services rendered. I have no economic interest in the outcome of this litigation."); ECF No. 93-9

at 5 ("I am being compensated at my standard hourly rate of $750/hour for the time spent on this

case. My compensation is not contingent upon the outcome of this litigation."); *see also*

Defendant's Expert Designation, *Prusin v. Canton's Pearls, LLC*, No. JKB-16-605 (D. Md. Aug.

15, 2017) ("$175 per hour for all services related to this matter"). Mr. Dattilo's Declaration does not include a substantively similar statement and providing Mr. Dattilo's billing records is not the equivalent.[9] Thus, Mr. Dattilo's Declaration does not include the disclosure required by Fed. R. Civ. P. 26(a)(2)(B)(vi) and the Court may consider sanctions under Fed. R. Civ. P. 37(c)(1).

### c.    Exclusion of Mr. Dattilo's Declaration and Testimony Under Rule 37(c)(1) is Inappropriate

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that a party who fails to make adequate disclosures under Rule 26(a) is not permitted to use such witness or evidence on a motion, at a hearing, or at trial, "unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The Fourth Circuit has held that district courts have "broad discretion in deciding whether a Rule 26(a) violation is substantially justified or harmless." *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). "The purpose of Rule 37(c)(1) is to prevent a party from surprising and, thus, prejudicing the opposing party," *Ace Amer. Ins. Co. v. McDonald's Corp.*, No. GLR-11-3150, 2012 WL 2523883, at *5 (D. Md. June 28, 2012), and, consequently, the Fourth Circuit has held district courts should consider the following factors when determining whether a Rule 26(a) violation is substantially justified or harmless under Rule 37(c)(1):

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc.*, 318 F.3d at 597. The first four of these factors relate mainly to the harmless exception and the final factor relates to the substantial justification exception. *Id.*

---

[9] Billing statements do not clarify how the expert will be paid in the future, such as for testimony at the Claim Construction Hearing, and do not indicate that the outcome of the litigation will not affect the expert's compensation.

While the Court notes Mr. Dattilo's Declaration is not a model of Fed. R. Civ. P. 26(a)(2)(B) compliance and would benefit from additional detail, the Court only found that the Declaration violated Rule 26(a)(2)(B)(vi). Additionally, although Mr. Dattilo's Declaration did not include "a statement of the compensation to be paid for the study and testimony in the case" as required by Fed. R. Civ. P. 26(a)(2)(B)(vi), Durr did subsequently provide EFC Mr. Dattilo's billing records as an ineffective attempt to remedy this failure. *See* ECF No. 94 at 13. Finally, due to the disputes addressed in this Memorandum, the parties have yet to schedule expert depositions and the Markman hearing has not been scheduled. Thus, should Durr provide a supplement disclosure—written and signed by Mr. Dattilo under penalty of perjury—stating how Durr was compensating him and indicating that his compensation was not reliant on the outcome of the litigation, then the original deficiency will be cured and rendered harmless. The Court orders Durr to provide such a supplemental disclosure within 14 days pursuant to Fed. R. Civ. P. 26(e).

Therefore, after considering the five factors listed above, the Court finds exclusion of Mr. Dattilo's Declaration and Testimony pursuant to Fed. R. Civ. P. 37(c)(1) inappropriate. There is minimal surprise to EFC. Mr. Dattilo's Declaration includes a statement of his opinions and all the facts and data on which those opinions rely, and indicates that he will not rely on any exhibits to support his testimony. *See* ECF No. 94-1. Mr. Dattilo's testimony is now limited to those opinions, materials, and exhibits that he disclosed. The Declaration also indicates Mr. Dattilo's qualifications and experience as an expert witness, and EFC has some knowledge of Mr. Dattilo's compensation from the billing statements Durr provided. *Id.*; ECF No. 94 at 13. Moreover, EFC can depose Mr. Dattilo before the Markman hearing should it so choose. *See* ECF No. 94 at 14–15. Additionally, allowing Durr to supplement Mr. Dattilo's Declaration will

cause minimal disruption to this proceeding, especially since expert depositions and the Claim Construction Hearing have yet to be scheduled. Finally, while the Court is unsure as to why Durr chose not to supplement its disclosures earlier for the sake of clarity and resolving the dispute with EFC, it appears that Durr was justifiably confused as to whether Fed. R. Civ. P. 26 applied to Claim Construction experts given the lack of binding case law in this district, the differing local rules in other districts, and the resulting varying approaches taken by our sister courts.

Thus, this Court denies EFC's Motion to Strike Mr. Dattilo's Expert Testimony, but orders Durr to supplement Mr. Dattilo's Declaration, within 14 days, with a statement—written and signed by Mr. Dattilo under penalty of perjury—stating how Mr. Dattilo is being compensated for his participation in this case. Both parties' request for costs and fees are denied.

### 3.    Motion to Compel

Durr filed a Motion to Compel in order to request the Court to "compel the deposition of Dr. Werner Dahm regarding his 53-page 'Expert Report' submitted by EFC as Exhibit 24 to its Opening Claim Construction Brief in support of its Markman claim construction positions." ECF No. 98-1 at 5. EFC responded that "whether Dr. Dahm's deposition may be taken depends upon the Court's interpretation" of Fed. R. Civ. P. 26(a)—*i.e.*, if Rule 26(a)'s disclosure requirements apply to Claim Construction experts, then the deposition may be taken, but if not, the deposition should not be allowed. ECF No. 98-2 at 4. EFC argued that "[o]nce the issue of applicability of Rule 26 is resolved, if the Court finds that Rule 26 does apply to experts testifying at a claim construction hearing, EFC will happily make Dr. Dahm available for deposition." *Id.* at 5.

The Court has now resolved the issue of Rule 26's applicability and found that Rule 26 applies to experts testifying at a claim construction hearing, *see supra* § II.B.2.a, thus, ECF's

agreement to make Dr. Dahm available in those circumstances resolves this Motion. EFC agrees

a deposition is appropriate and Durr's Motion to Compel is granted.

**IV.     CONCLUSION**

For the foregoing reasons, Durr's Motion to Strike Affirmative Defenses is granted, Drr's

Motion to Strike Dr. Dahm's Expert Testimony is denied, EFC's Motion to Strike Mr. Dattilo's

Expert Testimony is denied, Durr is ordered to provide a supplement disclosure—written and

signed by Mr. Dattilo under penalty of perjury—stating how Durr is compensating Mr. Dattilo,

and Durr's Motion Compel is granted. A separate Order shall issue.

Date: <u>February 2, 2021</u>                                              /s/

                                                                      GEORGE J. HAZEL
                                                                      United States District Judge