IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| **DURR SYSTEMS, INC.,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-18-2597 |
| **EFC SYSTEMS, INC.,** | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This patent infringement litigation arises from a dispute between Plaintiff Durr Systems, Inc. ("Durr") and Defendant EFC Systems, Inc. ("EFC") related to patents for bell cups manufactured by Durr for use in spray painting systems. ECF No. 60. The Court previously issued a claim construction ruling regarding eight disputed terms. ECF Nos. 129, 130. Currently pending before the Court is Durr's Motion for Clarification of portions of the claim construction ruling. ECF No. 133. A hearing on the Motion is not necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons stated below, the Court will clarify portions of its ruling.

I.   **BACKGROUND**[1]

Plaintiff Durr Systems ("Durr") is a U.S. subsidiary of Dürr AG, a German company that has been manufacturing robotic paint systems and bell cups for automotive and industrial paint facilities for decades. Durr sells, supplies, and services automated spraypainting systems within the United States for original and retro-fit installation in painting facilities. In connection with

---

[1] These facts are taken from the Memorandum Opinion, ECF No. 129, unless otherwise noted. Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

1

this business, Durr also sells and supplies replacement bell cups. Defendant EFC Systems, Inc. ("EFC") was established in 1993 as an alternative source for industrial paint equipment. ECF No. 66 at 30. EFC does not manufacture or sell robotic arms, robotic control systems, or similar equipment. Instead, EFC claims to specialize in the design, construction, and manufacture of turbines, bell cups, and other critical parts for industrial paint equipment.

Durr is the alleged assignee of five different patents for rotary atomizers—i.e. bell cups—for use with particulate paints: the '804 Patent, the '962 Patent, the '835 Patent, the '797 Patent, and the '813 Patent. ECF No. 60 ¶ 35. As the assignee, Durr purports to be the owner of all rights, title, and interest in and to the Asserted Patents and to have the right to sue and recover for infringement thereof. ECF No. 66 at 30–31; ECF No. 67 ¶¶ 14–19. The Asserted Patents are all in the same patent family and share a common specification. ECF No. 60 ¶¶ 36–37. Durr has asserted that EFC's manufacture and sale of certain bell cups has infringed Claim 1 of the '804 Patent, Claim 1 of the '962 Patent, Claim 6 of the '835 Patent, Claim 8 of the '797 Patent, and Claim 1 of the '813 Patent. ECF No. 66 at 32. Durr has also asserted that EFC has induced infringement of Claim 1 of the '797 Patent. *Id.* These claims all recite and require a bell cup that possesses specific features regarding the "overflow surface," the "deflector," and/or the "rear cover." ECF No. 66 at 32; see ECF No. 60 ¶¶ 155, 165, 179, 191, 203, 227. EFC has responded to Durr's allegations by arguing (1) that EFC's products do not infringe the Asserted Patents, and (2) that the Asserted Patents are invalid. ECF No. 66 at 32–37, 39–41.

On January 24, 2020, the parties filed their Joint Claim Construction Statement. ECF No. 62. Durr's position was that all the claim terms have their plain and ordinary meanings, *see id.* at 1, while EFC's position was that eight claim expressions have special or uncommon meanings, *see id.* at 2; ECF No. 62-3. The eight expressions were: (1) "paint;" (2) "particulate material" and

"particulate paint;" (3) "substantially continuous [conical overflow surface];" (4) "conical [surface or overflow surface or front surface];" (5) "generally conical [overflow surface or surface]" and "substantially conical [overflow surface or front surface];" (6) "generally constant [flow angle/angle]" and "substantially constant [angle];" (7) "generally parallel" and "substantially parallel;" and (8) "rear cover attached to the bell cup" and "bell cup further having attached thereto a rear cover." *See* ECF No. 62-3. The parties submitted briefs, ECF Nos. 79, 80, 81, and the Court held a hearing, ECF No. 120.

On November 8, 2021, the Court issued its ruling on the claim constructions. *See* ECF Nos. 129, 130. On November 22, 2021, Durr moved for clarification of certain portions of the Court's ruling. ECF No. 133. In particular, Durr seeks to clarify the constructions of "generally/substantially conical" and "generally/substantially constant." ECF No. 133-1 at 1. EFC filed a response in opposition, arguing that no further clarity is needed and that the motion was just a motion for reconsideration by another name. ECF No. 135 at 4. Durr replied. ECF No. 136.

**II.    LEGAL STANDARD**

"Patent claims are construed as a matter of law." *Balt. Aircoil Co. v. SPX Colling Techs., Inc.*, No. 13-cv-2053-CCB, 2015 WL 5102872, at *1 (D. Md. Aug. 28, 2015). "The purpose of claim construction is to determin[e] the meaning and scope of the patent claims asserted to be infringed." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (alteration in original) (citation omitted). "When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." *Id.*;

*see also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996) (holding that the interpretation of a claim term "is an issue for the judge, not the jury").[2]

### III. DISCUSSION

Durr seeks to clarify portions of the Court's previous claim construction ruling. ECF No. 133-1. Before discussing each of Durr's requests, this Court will conduct a brief review of the principles of claim construction.[3]

As the Court noted in the Memorandum Opinion, ECF No. 129, and in its Letter Order, ECF No. 47, Maryland's local claim construction rules call for (1) asymmetrical disclosure of claim interpretations prior to claim construction briefing; and (2) disclosure of "special or uncommon meanings." *See* Loc. R. 805 (D. Md. 2021). These "special or uncommon meanings may include constructions based on lexicography or disavowal and any terms that have a specific and special meaning or usage within a particular field that would not be readily apparent to a layperson." ECF No. 47 at 2. This Court later clarified that while "special or uncommon meanings" does include Industry Specific Meanings—i.e., specific special meanings within the industry—"special or uncommon meanings" also includes "the broader category of meanings that would not be readily apparent to a layperson, but would be understood by 'a person of ordinary skill in the art in question at the time of the invention[,]'" ECF No. 111 at 10–11 (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005)).

"[A] claim construction analysis must begin and remain centered on the claim language itself, for this is the language the patentee has chosen to particularly point out and distinctly claim the subject matter which the patentee regards as his invention." *Source Vagabond Sys. Ltd.*

---

[2] "The proper construction of a patent's claims is an issue of Federal Circuit law[.]" *ContentGuard Holdings, Inc. v. Apple Inc.*, 701 F. App'x 957, 960 (Fed. Cir. 2017).

[3] The Court's previous Memorandum Opinion discussed these principles in greater detail. *See* ECF No. 129 at 4-12.

*v. Hydrawpak, Inc.*, 753 F.3d 1291, 1299 (Fed. Cir. 2014) (cleaned up) (quoting *Innova/Pure Water, Inc v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)); *see also Phillips*, 415 F.3d at 1312 ("It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." (internal quotation marks and citation omitted)). "The presumption is that claim terms should be given their 'ordinary and customary meaning,' . . . and not a restrictive construction unless there is clear evidence to support it in the intrinsic evidence, or a broader meaning is specifically disclaimed during prosecution." *Aventis Pharms. Inc. v. Amino Chems., Ltd.*, 715 F.3d 1363, 1375 (Fed. Cir. 2013) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

"[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the application." *Phillips*, 415 F.3d at 1313. However, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification" and the prosecution history. *Id.* "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of widely accepted meaning of commonly understood words." *Id.* at 1314. In other words, when the plain meaning of a claim is immediately apparent because the claim does not use "technical terms of art," the claim terms will not require "elaborate interpretation." *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001).

When, however, the ordinary meaning of a claim term is not readily apparent and the Court must engage in further interpretation, "the court looks to 'those sources available to the

public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116). Such sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id.* (citation omitted).

Finally, as relevant here, "[a] district court may engage in claim construction during various phases of litigation, not just in a *Markman* order." *Conoco, Inc. v. Energy & Env't Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) (quoting *Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002)). A court may also "exercise its discretion to reconsider its Order on Claim Construction." *Remediation Prod., Inc. v. Adventus Americas Inc.*, 2009 WL 10684974, at *1 (W.D.N.C. Aug. 7, 2009) (citing *Am. Canoe Ass'n, Inc. v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)). However, because of that discretion, a court may also decline to clarify, or reconsider, claim terms. *See Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix Inc.*, 2011 WL 13112240, at *9 (E.D. Va. Jan. 7, 2011), *aff'd in part*, *vacated in part*, *remanded*, 672 F.3d 1270 (Fed. Cir. 2012).

A court has a "duty to resolve fundamental disputes regarding claim scope." *Apple, Inc. v. Samsung Elecs*. Co., 2014 WL 252045, at *3 (N.D. Cal. Jan. 21, 2014) (citing *O2 Micro Int'l v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc))). However, a court also retains "case management authority." *See generally Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 2019 WL 2774321, at *9 (E.D. Va. July 2, 2019) (discussing a court's "case management authority" to decline to "construe all terms in the patents at issue" or "to deny the request for additional claim construction[.]"). While a court is required to settle an "actual

dispute regarding the proper scope" of the claims, *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010), "restating a settled argument does not create an actual dispute[,]" *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) (citing *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010)). "[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

With these principles in mind, the Court turns to whether it must clarify any aspects of its previous claim construction ruling.

### A. Generally/Substantially Conical

The Court construed "generally/substantially conical" to mean: "A surface that consists of one or more conical portions but without undulations or curved portions (e.g., a surface consisting of portions of two cones, etc.)" ECF No. 129 at 24. The Court also adopted the plain and ordinary meaning of "conical." *Id.* at 22.

#### 1. "One or more"

The Court adopted the plain and ordinary meaning of "conical" because a "cone is a widely recognized shape" that "does not require elaborate interpretation." ECF No. 129 at 22. The Court found no reason to depart from plain meaning and adopt EFC's precise geometric definition. *Id.* at 23. The Court noted that while EFC argued that a conical surface is a "smooth and continuous surface with a constant flow angle," that description "aligns with what a layperson would understand conical to mean." *Id.* at 23. The Court then adopted EFC's definition of "generally/substantially conical." ECF No. 129 at 22.

Durr argues that the construction of "generally/substantially conical" is ambiguous and that the Court should clarify that "generally/substantially conical" does not exclude surfaces with "inconsequential variation" or "inconsequential curves." ECF No. 133-1 at 2, 4. EFC responds that "inconsequential" variation or curvature is a concept invented by Durr. ECF No. 135 at 5.

The Court did not discuss "inconsequential" curvature in its analysis. Additionally, it is unclear what would constitute "inconsequential" curvature, and Durr has not put forth an explanation. Further, as elaborated on more below, the Court must read a term "'in the context of the entire patent, including the specification and the prosecution history[,]'" *id.* at 26 (quoting *Phillips*, 415 F.3d at 1313), which, in this case, excludes "curved portions" and "undulations." Thus, the Court declines to read "inconsequential" curvature or variation into this claim construction, let alone define what would constitute "inconsequential" curvature or variation.

2. **"Without undulations or curved portions"**

Durr next argues that it is ambiguous whether "undulations" and "curved portions" are synonyms or two distinct terms. ECF No. 133-1 at 4. Durr urges the Court to find that the terms are synonymous and to excise "curved portions" from the definition. *Id.* at 5. EFC responds that the concepts are distinct. ECF No. 135 at 7.

"Undulations" and "curved portions" are distinct terms. In the Memorandum Opinion, the Court explained that the specifications "distinguish between 'generally conical' shaped surfaces and 'rounded' surfaces." ECF No. 129 at 26. The Court also noted that "[b]y distinguishing the Asserted Patents from the bell cup disclosed in Schneider '487, the patent applicant made clear that 'substantially conical 'does not include undulations or curved portions." *Id.* at 27. The Court then explained that the prosecution history was clear that "an undulating bell cup . . . is not 'substantially conical.'" *Id.* The Court next explained the "the patent applicant has indicated that

8

the curved portion of the Schneider '487 bell cup is not 'substantially conical[.]'" *Id.* at 28. The Court then noted that "the specifications provide further support for construing 'generally/substantially conical' surfaces to exclude undulating surfaces or surfaces with curved portions because the specifications only demonstrate overflow surfaces that do not undulate and do not have curved portions." *Id.* at 27 n.10.

Finally, Durr requests that the Court explain its basis for excluding "curved portions" from the definition. ECF No. 133-1 at 5. As discussed, the Court used the specifications and the prosecution history to determine that "generally/substantially conical" excludes surfaces with undulations or curves. The Court further noted that the specifications only demonstrate surfaces that do not undulate and do not have any curved portions. ECF No. 129 at 27 n.10. The Court reasoned that while normally limitations from an embodiment may not be read into the claims absent "'clear indication in the intrinsic record[,]'" *id.* (quoting *GE Lighting Sols., LLC*, 750 F.3d at 1309), here, "the intrinsic evidence does support excluding surfaces without undulations or curved portions" in the definition. *Id.*

Thus, this Court found that there was a clear and unambiguous exclusion of curved portions and undulations in both the specification and the prosecution. *See* ECF No. 129; *see also GE Lighting Sols., LLC*, 750 F.3d at 1309 ("[D]isavowal requires that 'the specification [or prosecution history] make[ ] clear that the invention does not include a particular feature.'" (quoting *SciMed Life Sys. Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001)).

### B. Generally/Substantially Constant

The Court construed "generally/substantially constant" to mean: "Consisting of one or more distinct angles, which neither vary continuously or oscillate, and which do not form a lip." ECF No. 129 at 29.

#### 1. "One or more"

Durr first makes a general argument that this definition is ambiguous because the Court adopted the plain and ordinary meaning of "conical." ECF No. 133-1 at 4. But Durr has not identified ambiguity in this portion of the definition, nor clearly explained why any ambiguity regarding the definition of "conical" affects the definition of "generally/substantially constant." The Court declines to clarify here.

#### 2. "Neither vary continuously nor oscillate"

Durr next argues that it is ambiguous whether "vary continuously" and "oscillate" are synonyms. ECF No. 133-1 at 5. Durr requests that the Court remove "vary continuously" from the definition. *Id.* at 6. EFC responds that the concepts are distinct. ECF No. 135 at 10.

The Memorandum Opinion was clear that a "generally/substantially constant angle" may not "vary continuously *nor* oscillate." ECF No. 129 at 29 (emphasis added). First, the Court decided that the specification defines the term "constant" as "does not oscillate," which shows that a "person of ordinary skill in the art would interpret a 'generally/substantially constant' angle to exclude an angle that oscillates.'" *Id.* at 31. Second, the Court decided that a person of ordinary skill in the art would also not construe this type of angle to "include continuously varying angles." *Id.* at 32.

However, the definition in the Court's Order stated that a "generally/substantially constant angle" may not "vary continuously or oscillate." ECF No. 130 at 1. Thus, the Court

10

takes the opportunity to clarify that the adopted construction was: "Consisting of one or more distinct angles, which neither vary continuously *nor* oscillate, and which do not form a lip." ECF No. 129 at 29 (emphasis added).

Finally, Durr requests that the Court explain its basis for including "vary continuously" in the definition. ECF No. 133-1 at 6. As the Court noted in its Letter Order, "special and uncommon meanings" are not limited to the narrow doctrines of disavowal and lexicography. ECF No. 47 at 2. The Court directed the parties to submit claim construction statements identifying "special or uncommon meanings," which "may include constructions based on lexicography or disavowal *and* any terms that have a specific and special meaning or usage within a particular field that would not be readily apparent to a layperson." *Id.* (emphasis added).

The Federal Circuit has recognized that there is "sometimes 'a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification.'" *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1307 (Fed. Cir. 2003) (quoting *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998)). "[T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Phillips*, 415 F.3d at 1323. Importantly, "there is no magic formula or catechism for conducting claim construction." *Id.* at 1324. "Nor is the court barred from considering any particular sources or required to analyze sources in any specific sequence, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Id.*

The Court construed this claim term in light of how a person of ordinary skill in the art would construe a "generally/substantially constant angle." *See* ECF No. 129 at 31. Using the

11

intrinsic evidence, the Court determined that a person in this position would not construe such an angle to "oscillate" or "continuously vary." The Court did not base this definition on disclaimer; instead, the Court noted that this construction "stays true to the claim language and most naturally aligns with the patent's description of the invention[.]" *Id.* at 32 (quoting *Phillips*, 415 F.3d at 1316).

### IV. CONCLUSION

For the reasons discussed, the Court makes some clarifications of the previous claim construction ruling and declines to make others. A separate Order follows.

Dated: September 30, 2022               /s/_____
                                        GEORGE J. HAZEL
                                        United States District Judge